IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | § § § § | CIVIL ACTION 6:20-CV-1163-ADA |
| Plaintiff, | § § | PATENT CASE |
| v. | § § | |
| SALESFORCE.COM, INC., | § § | |
| Defendant. | § | JURY TRIAL DEMANDED |

**RESPONSE OPPOSING DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

There is no merit to Salesforce.com Inc.'s ("Salesforce") allegation that the Complaint filed by WSOU Investments, LLC ("WSOU") fails to state a plausible claim for direct infringement of U.S. Patent No. 7,551,731 ("the '731 patent"). Salesforce's flawed arguments regarding direct infringement are based on unstated and premature claim construction positions and on factual disputes that require further discovery. As explained further below, dismissal is unwarranted where the Court has yet to resolve these alleged claim construction issues and factual disputes.

There is also no merit to Salesforce's motion to dismiss WSOU's indirect infringement claims. First, WSOU need not allege "pre-suit knowledge," as Salesforce erroneously insists, because WSOU's indirect-infringement claims seek damages only for post-suit indirect infringement. Second, WSOU's detailed allegations are more than sufficient to allege (a) the specific intent required for induced infringement and (b) a substantial non-infringing use required for contributory infringement. The complaints in the cases on which Salesforce relies bear no resemblance to WSOU's detailed complaint. Defendant's motion should be denied.

## ARGUMENT

### I.  Legal Standard

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)); *Altman*, 2012 WL 4033336, at *1. In other words, it must appear beyond doubt that the plaintiff can prove no set of facts in support of their claim entitling them to relief. *Griffith v. Kroger Co.*, No. 9:05-CV-76-TH, 2008 WL 11347989, at *2 (E.D. Tex. Mar. 7, 2008) (citing *Conley v, Gibson*, 355 U.S. 41, 45–46 (1957)); *see also ESW Holdings, Inc. v. Roku, Inc.*, 6:19-CV-00044-ADA, 2019 WL 10303653, at *1–2 (W.D. Tex. May 13, 2019).

1

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim has "facial plausibility" and must not be dismissed "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal under Rule 12(b)(6) is inappropriate where fact discovery could affect the court's analysis. *See Slyce Acquisition*, 2020 WL 278481, at *6 (denying Rule 12(b)(6) motion because fact discovery could affect the court's § 101 analysis).

## II. WSOU alleges a plausible claim for direct infringement

### A. Defendants' arguments regarding the "caller ID" claim element is improper

Salesforce argues that the Complaint fails to identify "any step of the asserted method claim [and] allegations to support any inference that any step of the claimed method is performed." Dkt. 20 at 5. The Federal Circuit, however, has clarified the *Iqbal / Twombly* pleading standard for direct infringement in *Disc Disease Sols. Inc. v. VGH Sols.*, Inc., 888 F.3d 1256 (Fed. Cir. 2018). In *Disc Disease*, the Federal Circuit found the plaintiff's allegations sufficient because the complaint specifically identified the three accused products and alleged that the accused products met "each and every element of at least one claim" of the asserted patents, either literally or equivalently. 888 F.3d at 1260. Similarly here, WSOU has identified an accused product (*see e.g.,* Dkt. 1 at 3, ¶4) and alleged that "each and every element of at least claim 1 of the '731 Patent is found in the Accused Products." *Id.* at 17, ¶29. WSOU has also alleged that "Salesforce continues to directly infringe at least one claim of the '731 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos." Id., ¶30. Therefore, WSOU's similarly pled complaint, as the plaintiff's complaint in

*Disc Disease*, is more than sufficient to survive Defendant's motion to dismiss. *Disc Disease*, 888 F.3d at 1260; *see also Encoditech, LLC v. Citizen Watch Co. of Am., Inc.*, SA-18-CV-1335-XR, 2019 WL 2601347, at *4 (W.D. Tex. June 25, 2019).

Salesforce also wrongly asserts that WSOU "must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met." Dkt. 20 at 5-6 (quoting *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018)). Salesforce's reliance on *Chapterhouse* is misplaced. Notably, in *Chapterhouse*, Judge Gilstrap deviated from *Disc Disease* making clear that his ruling was limited to the particular facts, noting that "both more claims and more complicated patents than those at issue in *Disc Disease*." *Chapterhouse*, 2018 WL 6981828, at *2. *Chapterhouse* dealt with four patents and thirteen independent claims whereas Disc Disease dealt with one patent and three independent claims. *Id*. Here, the single patent (the '731 patent) has just four independent claims and the situation is more similar to *Disc Disease*'s single patent. Nor has Salesforce made any showing that the '731 patent is "more complicated" than what is at issue in *Disc Disease*. Thus, the *Disc Disease* standard should govern.

Even if Salesforce had made a showing that the case is analogous to *Chapterhouse*, both this Court and the District of Delaware have applied *Disc Disease* independent of the number of claims of the complexity of the asserted patents. *Encoditech,* 2019 WL 2601347, at *4 (quoting *Encoditech, LLC v. Qardio, Inc.*, C.A. No. 1:18-864, 2019 WL 2526725 (D. Del. June 19, 2019)) ("The [District of Delaware] found that *Encoditech* has thus 'met the relatively low threshold for stating a claim of direct infringement set forth by the Federal Circuit in Disc Disease ....' Here, the Court reaches the same conclusion, as *Encoditech* has alleged all claim elements and has cleared the low *Disc Disease* bar."). Thus, Salesforce should not attempt to carve out an exception to the general *Disc Disease* standard when this Court does not follow the type of analysis followed in *Chaptherhouse*.

### B. Salesforce's "alternate caller ID" argument is an improper and premature claim construction issue.

Salesforce argues that the Complaint lacks any support for the assertion that the Accused Instrumentality (Salesforce Communities) "performs a method for displaying alternative caller ID information." *See* Dkt. 20 at 5; see also id. at 2-3. But the claims do not reference "alternate caller ID information" or even the subphrase "caller ID." Accordingly, Salesforce is arguing a tacit claim construction position at the pleading stage. Salesforce's reliance on such a tacit claim construction argument is generally "inappropriate to resolve a claim construction dispute on a motion to dismiss for failure to state a claim of infringement[.]" *Regents of Univ. of Michigan v. Leica Microsystems Inc.*, 19 CV-07470-LHK, 2020 WL 2084891, at *6 (N.D. Cal. Apr. 30, 2020); *Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, W-19-CV-00257-ADA, 2020 WL 278481, at *5 (W.D. Tex. Jan. 10, 2020). To the extent Salesforce is relying upon a factual dispute regarding the functionality of the accused products, Salesforce has not produced evidence sufficient to evaluate its conclusory allegations, and therefore Salesforce's motion should be denied to allow proper discovery of the issue. Regardless, as Salesforce's premature claim construction and fact arguments demonstrate, Salesforce has been placed on notice as to the claims.

### C. Salesforce's "joint infringement" challenge is improper and/or premature

In its Motion, Salesforce asserts that joint infringement is the only theory of recovery allowed under claim 1 of the '731 patent and that WSOU has failed to plead joint infringement. *See* Dkt. 20 at 6-7. Salesforce tacitly construes claim 1 to its benefit and then contends that more than one entity is required to perform the steps of method claim 1. Thus, although styled as a 12(b)(6) motion, Salesforce effectively asks this Court, first, to adopt their own interpretation of claim 1 and, second, to rule on the merits of WSOU's infringement claims.

Tellingly, Salesforce fails to link the alleged "third parties" with actual steps of method claim 1. Contrary to Salesforce's suggestion, the language of claim 1 can be construed so the claim is performed by a single actor. The three steps of claim 1 of the '731 patent merely reference "entering a command …," "looking up …" and "using the at least of an alternate caller name, an

alternate caller number and an alternate caller message …" None of the steps refer to specific entities that perform each of these steps. Salesforce's reliance on this Court's *De La Vega* opinion is inapposite. Dkt. 20 at 7 (quoting *De La Vega v. Microsoft Corp.*, No. 19-1612, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020)). In *De La Vega*, this Court identified method steps that require three separate actors, two of which were defendants Google and Microsoft. Here, Salesforce does not link its allegations of third-party action to any steps in the method claim. Nor do the claims require "separate actors" as in *De La Vega*.

Even if Salesforce had attempted to link third party actions to specific method steps, dismissal based on alleged joint infringement would still be premature, as the Court has yet to construe the claims. *See H-W Tech., L.C. v. Apple, Inc.*, 3:11-CV-651-G, 2013 WL 12124025, at *5 (N.D. Tex. May 28, 2013) (denying dismissal when the procedurally "no claim construction ruling has issued and, therefore, dismissal is premature").

\* \* \*

Therefore, Salesforce's motion fails at least because (i) the Complaint alleges a plausible claim for direct infringement under *Disc Disease*, 888 F.3d at 1260; *see also Encoditech, LL,* 2019 WL 2601347, at *4, (ii) Salesforce's arguments are based improperly on unstated and premature claim construction arguments regarding "alternate caller ID"; and (iii) Salesforce's "joint infringement" challenge is both improper and premature.

### III. WSOU alleges a plausible claim for indirect infringement

#### A. WSOU need not allege "pre-suit knowledge" to support an indirect infringement claim that (a) accrued during litigation and (b) seeks only post-suit damages.

WSOU need not allege "pre-suit knowledge" to support an indirect infringement claim that accrued during litigation and seeks only post-suit damages. The Federal Circuit has never held that a cause of action for indirect infringement must be based on "pre-suit" knowledge or that a party is barred from asserting an indirect infringement claim seeking only post-suit damages. To the contrary, the Federal Circuit has repeatedly recognized that a party "***may seek to pursue claims***

*that accrue during the pendency of a lawsuit[.]*" See e.g., *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1345 (Fed.Cir.2012) (emphasis added). Indirect infringement is a cause of action. As a cause of action, it may accrue during the pendency of a lawsuit, and if it does, a plaintiff should be allowed to pursue it. *Id.* To hold otherwise is to ignore clear Federal Circuit precedent. *See id.*

While some district court opinions have erroneously embraced the "pre-suit knowledge rule," there are compelling reasons to reject it. To the extent this Court considers its decisions in *Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020) or *Parus Holdings Inc. v. Apple Inc.*, No. 6:19-cv-432, D.I. 54 (W.D. Tex. Feb. 20, 2020) to embrace the "pre-suit knowledge rule," WSOU respectfully urges this Court to reconsider.

The most compelling and basic reason to reject the "pre-suit knowledge rule" is the well-established rule, stated above, that a party "may seek to pursue claims that accrue during the pendency of a lawsuit[.]" *Id.* The "pre-suit knowledge rule" (erroneously accepted only by some district courts) violates this well-established rule (repeatedly recognized by higher courts).

Salesforce relies, in part, on *Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011), but *Aguirre* relies on a Delaware case (*Xpoint*) that has since been rejected by several Delaware courts.[1] In *Walker Digital*, for example, the Court stated:

> The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been

---

[1] Delaware courts are split on whether a defendant's knowledge of infringement must come from some source other than the original complaint to support a claim for indirect infringement. WSOU's amended complaint correctly states that "[s]everal Delaware courts have since rejected" the rule in *Aguirre* and quotes Delaware authority directly rejecting *Aguirre*.

6

filed, defendant in fact has the requisite knowledge as pled by plaintiff. *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d at 566. Delaware reached the same conclusion in *IOENGINE, LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019), finding "no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint." Other courts, including courts in Delaware and the Eastern District of Texas, have reached the same conclusion.[2]

### B. WSOU adequately alleges intent for induced infringement.

Salesforce incorrectly characterizes WSOU's Complaint as offering nothing more than citations to Salesforce's promotional materials and a conclusory allegation of inducement. WSOU alleges significantly more. The Complaint sets out detailed allegations of direct infringement, identifying the accused products and functionalities. *See* Complaint, Count One ¶¶ 4-31. The Complaint further includes screenshots and citations to Salesforce's online user manuals, which contain instructions and demonstrations for how to use the accused functionalities in an infringing manner. *Id.*

The Complaint further alleges that Salesforce's customers directly infringe the patent by using the Accused Product in accordance with Salesforce's instructions and that Salesforce provides customers instructions on how to infringe the patent with its user manuals and advertising. *Id.* ¶¶ 32-33. This allegation, ***coupled*** with WSOU's detailed discussion identifying the accused functionalities in preceding paragraphs of the Complaint and the screenshots of advertisements and instructions on Salesforce's website, is more than enough to give rise to a reasonable inference that Salesforce intended to induce. *See Maxell Ltd. v. Apple Inc.*, 5:19-CV-00036-RWS, 2019 WL 7905455, at *4 (E.D. Tex. Oct. 23, 2019) ("The preceding discussion identifying the accused

---

[2] *See also Firstface Co., Ltd. v. Apple, Inc.*, 2019 WL 1102374, *1-2 (N.D. Cal. 2019); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355–57 (Fed. Cir. 2018); *Tierra Intelectual Borinquen, Inc. v. ASUS Computer International, Inc.,* 2014 WL 1233040, *2 (E.D. Tex. 2014); *Telecomm Innovations, LLC v. Ricoh Co.*, 966 F.Supp.2d 390, 393 (D. Del. 2013); *E.I Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, No. 11-773, 2012 WL 4511258, at *6 (D. Del. Sept. 28, 2012).

functionalities and the screenshots of advertisements and instructions on Apple's website, coupled with this allegation, are more than enough to give rise to a reasonable inference that Apple intended to induce infringement.").

WSOU's pleadings are **at least** as detailed as those the Federal Circuit deemed sufficient to defeat a motion to dismiss. *Nalco Co. v. Chem-Mod*, LLC, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (denying motion to dismiss where pleadings alleged defendants inducing actions included "providing instructions, support, and technical assistance for the use of the [accused instrumentality]."); *see also Script Security Solutions L.L.C. v. Amazon.com, Inc*., 170 F. Supp. 3d 928, 936 (E.D. Tex. 2016) (denying a 12(b)(6) motion to dismiss allegations of induced infringement where "the defendants induced customers to infringe the patents by instructing them in advertising and promotion to use the accused products in an infringing way"); *Canon, Inc. v. TCL Electronics Holdings Ltd.*, No. 2:18-CV-00546-JRG, 2020 WL 1478356, *5-*6 (E.D. Tex. Mar. 25, 2020) (denying motion to dismiss inducing and contributory infringement claims despite the lack of specifics in how the material the accused infringers disseminated in connection with the accused product encouraged infringement); *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. Sept. 27, 2019) (denying motion to dismiss because complaint contained general allegations that the end-user's of the accused software product were the direct infringers and that the accused infringer through its advertising and instruction manuals encouraged the end user to use the product in an infringing manner).

Salesforce's reliance on *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-cv-752-JRG-JDL, 2015 WL 12850550 (E.D. Tex. Jul. 15, 2015) is misplaced. There, the complaint failed to allege "any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner[.]" *Id.* at 4. The Eastern District of Texas refused to apply *Core Wireless* in *Maxell* because the complaint in *Maxell* – like WSOU's complaint – "set[] out in detail allegations of direct infringement, identifying the accused functionalities and accused devices," included "screen-shots and descriptions of Apple's online user manuals and advertisements," and coupled these

allegations with an allegation that Apple induced its customers to infringe. *Maxell*, 2019 WL 7905455 at *4. In doing so, *Maxell* reemphasized the recognition in *Core Wireless* "that 'the provision of instructions by an accused infringer may indicate specific intent to induce infringement.'" *Id*. (quoting *Core Wireless*, 2015 WL 12850550, Slip Op. at *4). Other courts have adopted similar reasoning to *Maxell*.[3]

Salesforce's reliance on *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. 13-cv-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014) is likewise misplaced. The complaint at issue in *Affinity* did not set out in detail the accused functionality of an accused product, it did not include screenshots and descriptions of Blackberry's user manuals and advertisements, and it did not incorporate by reference detailed infringement contentions containing detailed references to Blackberry's user manuals and advertisement. Unlike here, the complaint there contained only a bald assertion of induced infringement.

Salesforce cannot reasonably argue that the *extraordinary* level of detail provided by WSOU fails to provide sufficient notice as to which functionalities stand accused of infringement or how Salesforce's manuals and advertisements—which include detailed instructions for configuring the accused functionalities to perform in an infringing manner—induce its users to directly infringe.

### C. WSOU adequately alleges contributory infringement.

Salesforce's argument concerning contributory infringement is similarly defective. Salesforce relies on *Inhale, Inc v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886

---

[3] *See*, *e.g.*, *Nomadix, Inc. v. Hospitality Core Services LLC*, 2015 WL 1525537, *3 (C.D. Cal. April 3, 2015) (denying motion to dismiss inducing infringement for allegedly not sufficiently pleading intent since the patentee's allegations that the accused infringer provided instructions to use its product in an infringing manner was sufficient); *U.S. Water Services, Inc. v. Novozymes A/S*, 2014 WL 2604997, *4–*6 (W.D. Wis. June 11, 2014) (denying motion to dismiss indirect infringement claims in view of allegations that the accused infringers "instructed potential customers to buy their product and use it in the same way as plaintiffs' patented methods"); *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 393–94 (D. Del. Aug. 6, 2013) (finding it sufficient that "plaintiff at bar alleges that defendants provided technical support and instructions to their customers on how to use products in such a way as to infringe the patented invention").

9

(W.D. Tex. Dec. 10, 2018), a case involving a complaint with barebones allegations of infringement[4] that bear no resemblance to WSOU's complaint.

A well-pled allegation addressed to the lack of substantial non-infringing uses is sufficient to satisfy the knowledge element of contributory infringement." *Motiva*, 408 F. Supp. 3d at 834. "Requiring [a patentee] to prove that [the accused infringer]'s software component only has a single use—instead of simply alleging as much—would 'effectively require[ ] [the patentee to prove, pre-discovery, the facts necessary to win at trial,'" and the law does not require this. *Id*. at 836 n.6 (citation omitted). Here, WSOU's detailed allegations outlining Salesforce's direct infringement and identifying examples of infringing features and components of the accused products, coupled with WSOU's well-pled allegation addressed to the lack of a substantial non-infringing use, is more than enough to plausibly claim contributory infringement.

## **CONCLUSION**

WSOU pleads factual content that allows this Court to draw the reasonable inference that Salesforce is liable for the misconduct alleged. Salesforce has not shown that WSOU would not be entitled to relief under any set of facts or any possible theory that it could prove consistent with the allegations in the Complaint, and its Motion should be denied.

Although Salesforce's motion should be denied outright, if the Court is inclined to grant any part of the motion, WSOU respectfully requests that the Court allow WSOU to amend its Complaint. Fed. R. Civ. P. 15(a)(2) (providing that leave to amend should be freely given when justice so requires.).

---

[4] Inhale's claim for infringement, stated *in its entirety*: "Upon information and belief, Defendant has infringed and continues to infringe ... indirectly through contributory ... infringement, claim 1 or 2 of the ['563] Patent by manufacturing, importing, offering for sale, and selling in the United States the GRAV Grinder." *Inhale, Inc v. Gravitron, LLC*, 1-18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) ("Beyond this conclusion, Inhale's complaint lacks any factual allegations permitting the court to reasonably infer the GRAV Grinder is a component of a patented invention, is especially made for use in infringing the '563 Patent, and has no substantial non-infringing use.").

Dated: June 21, 2021                     Respectfully submitted,

*/s/ Ryan S. Loveless*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296
Brett A. Mangrum
Texas State Bar No. 24065671
Jeffrey Huang
Brian M. Koide
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Jhuang@EtheridgeLaw.com
Brian@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**ATTORNEYS FOR PLAINTIFF**

# CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon all counsel of record via email in accordance with the Federal Rules of Civil Procedure on June 21, 2021.

>*/s/ Ryan S. Loveless*
>Ryan S. Loveless